*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0635**

State of Minnesota,
Respondent,

vs.

Chaz Jacobi Beckman,
Appellant.

**Filed February 6, 2017
Affirmed
Reyes, Judge**

Olmsted County District Court
File No. 55-CR-14-6419

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and T. Smith,

Judge.

### U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

        Appellant Chaz Beckman argues that the district court abused its discretion

because it denied his motion to withdraw his guilty plea and failed to consider the

relevant departure factors before denying his motion for a downward dispositional departure. We affirm.

**FACTS**

Appellant was charged with one count of first-degree drug possession of 25 grams or more of cocaine, heroin, or methamphetamine in violation of Minn. Stat. § 152.021, subd. 2(a)(1) (2014); one count of misdemeanor fourth-degree driving while intoxicated—under the influence of a controlled substance in violation of Minn. Stat. § 169A.20, subd. 1(2) (2014); and one count of misdemeanor possession of a dangerous weapon in violation of Minn. Stat. § 609.66, subd. 1(a)(4) (2014).

At the plea hearing, appellant pleaded guilty to one amended count of second-degree possession of methamphetamine under a written rule 15 plea petition. *See* Minn. R. Crim. P. 15.01, subd. 1. In exchange, the state agreed to: (1) dismiss all the remaining charges; (2) remain silent at appellant's sentencing hearing on any departure motion brought by appellant; and (3) if the district court granted appellant's departure motion, cap its jail recommendation at 120 days. While not part of the plea agreement, appellant was to enroll in Teen Challenge[1] to increase his chances that the sentencing court would grant a downward dispositional departure. At appellant's plea hearing, while appellant was under oath, the following exchange took place:

> [THE STATE:] You also understand that the State's agreement
> to abide by the terms of the joint recommendation are

[1] Teen Challenge offers assistance to participants in dealing with chemical addictions through programming that addresses an individual's physical, emotional, and spiritual needs. *See* About, MN Adult & Teen Challenge, http://www.mntc.org/about/ (last visited January 11, 2017).

contingent upon you abiding by your conditions of release, correct?

[APPELLANT:] Yes.

[THE STATE:] You understand what your conditions of release are, correct?

[APPELLANT:] Yes, I do.

[THE STATE:] You understand that if you don't cooperate with the PSI, or if you do not abide by the conditions of your release, that the State is not bound by the terms of this joint recommendation, correct?

[APPELLANT:] Correct.

[THE STATE:] And if that were to happen, if you were to not cooperate with the PSI, and you were to not abide by terms of the release, the State would not be bound by the terms of the joint recommendation, but you could not withdraw your plea of guilty at that time, correct?

[APPELLANT:] Yes.

Appellant's attorney did not make any comments, seek clarification, or object to the above exchange between appellant and the state. The district court then accepted appellant's guilty plea.

A couple of months after the plea, appellant was again arrested for possession of controlled substances and held in jail. He was furloughed to enroll in Teen Challenge, but he did not do so. The district court subsequently issued a bench warrant for appellant's arrest due to his failure to report to Teen Challenge. Appellant was arrested, and sentencing took place on February 10, 2016.

At the sentencing hearing, appellant asked the district court to furlough him a second time and give him another opportunity to enter Teen Challenge or, in the alternative, to allow him to withdraw his guilty plea. The state urged the district court to sentence appellant since he did not abide by the conditions of the plea agreement, which were to complete the pre-sentence investigation (PSI) process and follow the conditions

of his release.  The district court determined that the plea agreement, which included

appellant's admissions at the plea hearing, was contingent upon him cooperating with the

PSI process and abiding by the conditions of his release.[2]  Appellant was sentenced to 98

months in prison, which is within the sentencing guidelines for an individual with either

five or six criminal-history points. Minn. Sent. Guidelines 4.A (2014).  This appeal

follows.

**D E C I S I O N**

**I.      The district court did not err in denying appellant's plea-withdrawal motion because there was no manifest injustice.**

Appellant argues that the district court erred in denying his motion to withdraw his

guilty plea under Minn. R. Crim. P. 15.05, subd. 1 because his plea was invalid.  We

disagree.

A district court must allow withdrawal of a guilty plea if a defendant proves that

his plea is invalid, making "withdrawal . . . necessary to correct a manifest injustice."

Minn. R. Crim. P. 15.05, subd. 1; *see State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

"To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent."

*Nelson v. State*, 880 N.W.2d 852, 858 (Minn. 2016) (quotation omitted).  Determining the

terms of a plea agreement is a factual inquiry, but interpretation and enforcement of

agreements involving issues of law are reviewed de novo.  *State v. Miller*, 754 N.W.2d

---

[2] While the record does not explicitly list appellant's conditions of release, at the sentencing hearing, the district court stated that it looked into what the conditions of appellant's release were.  Neither party disputes that one of appellant's conditions of release was to remain law-abiding.

686, 707 (Minn. 2008) (quoting and citing *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn. 2004)).

Appellant argues only that his guilty plea was not voluntary—and thus was invalid—because the state made an unfulfilled promise to appellant, which induced him to plead guilty. Appellant contends that the conditions of the plea agreement are found only in the written rule 15 petition. Appellant further asserts that, because the state failed to remain silent, as it agreed to do in the written rule 15 petition, it made an unfulfilled promise that he relied upon to plead guilty.

"A guilty plea is involuntary when it rests in any significant degree on an unfulfilled or unfulfillable promise." *Uselman v. State*, 831 N.W.2d 690, 693 (Minn. App. 2013) (quotation omitted); *see also Kochevar v. State*, 281 N.W.2d 680, 687 (Minn. 1979) ("[A]n unqualified promise which is part of a plea arrangement must be honored or else the guilty plea may be withdrawn."). "Whether a plea is voluntary is determined by considering all relevant circumstances." *Raleigh*, 778 N.W.2d at 96. Minn. R. Crim. P. 15.09 requires "a verbatim record of the proceedings" to be made during a felony plea hearing. Because the plea transcript is the official record, we must consider it to determine the parties' understanding of the plea agreement. *See In re Ashman*, 608 N.W.2d 853, 858 (Minn. 2000) (concluding that "the terms of the plea agreement were clearly and unequivocally expressed" at the plea hearing); *see also* Minn. R. Crim. P. 15.01, subd. 1 (stating that at plea hearing, defendant must be questioned on his understanding of terms of plea agreement).

5

Here, as indicated at the sentencing hearing, one of the conditions of appellant's release was to remain a law-abiding citizen, which he failed to do by getting arrested on December 3, 2015. The plea transcript shows that the state's obligation to remain silent at sentencing in any departure motion by appellant was conditioned upon appellant cooperating with the PSI and abiding by the terms of his release. Appellant clearly stated on the record that he understood this obligation. Because appellant did not abide by the terms of release, the state was not required to remain silent. As such, the state did not make an unfulfilled promise to appellant that induced him to plead guilty. He voluntarily pleaded guilty, and the district court did not err in determining that appellant's plea was valid and that his plea withdrawal was not required to correct a manifest injustice.

**II.    The district court did not abuse its discretion by denying appellant's plea-withdrawal motion under the fair-and-just standard.**

Appellant next argues that the district court abused its discretion in denying his guilty-plea-withdrawal request under the fair-and-just standard. District courts may allow a defendant to withdraw a guilty plea at any time before sentencing "if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2. This court reviews the district court's application of the fair-and-just standard for an abuse of discretion. *State v. Lopez*, 794 N.W.2d 379, 382 (Minn. App. 2011).

Under the fair-and-just standard, a district court must consider: "(1) the reasons a defendant advances to support withdrawal and (2) prejudice granting the motion would cause the State given reliance on the plea." *Raleigh*, 778 N.W.2d at 97 (citing Minn. R. Crim. P. 15.05, subd. 2). A defendant bears the burden of providing reasons to support

withdrawal and the state bears the burden of showing prejudice caused by the withdrawal. *Id.* However, even if the state fails to show prejudice, a district court may still deny a defendant's motion if the defendant fails to advance substantive reasons why withdrawal is fair and just. *Id.* at 98.

Here, besides asserting the same argument as he did in his manifest-injustice claim, appellant argues that withdrawal of his guilty plea would have been fair and just because he was willing to face a possible higher sentence for the opportunity to enroll in Teen Challenge. In denying appellant's motion, the district court noted that appellant's plea was valid and that appellant had many opportunities to enroll in Teen Challenge since the date of his guilty plea but failed to do so. We discern no abuse of discretion by the district court.

Appellant also argues that his plea withdrawal is necessary because his criminal-history score was incorrect. The district court noted that, even though appellant's criminal-history score was incorrect at the time of his plea, it was not a sufficient reason to allow him to withdraw his guilty plea because he should have had notice of the incorrect score. Further, the state requested a sentence that fell within the acceptable range of his correct criminal-history score, allowing appellant to get the same presumptive sentence he would have received with his incorrect score. *See Uselman*, 831 N.W.2d at 693 ("If the district court intends to impose a sentence greater than the sentence the parties agreed to, it must first inform the defendant and allow him to withdraw his guilty plea."). We are not persuaded by appellant's contention that plea withdrawal would be fair and just because of his incorrect criminal-history score.

7

Although the state did not provide any evidence of prejudice, the district court did not abuse its discretion in concluding that appellant did not advance sufficient reasons entitling him to withdraw his guilty plea under the fair-and-just standard. *See State v. Cubas*, 838 N.W.2d 220, 224 (Minn. App. 2013), *review denied* (Minn. Dec. 31, 2013). Therefore, the district court acted well within its discretion in not granting appellant's motion to withdraw his guilty plea.

**III.    The district court did not abuse its discretion in denying appellant's motion for a downward dispositional departure.**

Appellant argues that the district court abused its discretion in not granting appellant's downward-dispositional-departure motion because it failed to fully consider all the factors that weighed in favor of departure. We disagree.

We review a district court's refusal to grant a dispositional departure from the sentencing guidelines for an abuse of discretion. *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006). We will affirm the imposition of a presumptive sentence "when the record shows [that] the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013) (quotation omitted). Generally, appellate courts will not disturb a presumptive sentence "even if there are grounds that would justify departure." *Bertsch*, 707 N.W.2d at 668 (quotation omitted).

A downward dispositional departure must be based on a finding that "the defendant is particularly amenable to probation or if offense-related mitigating circumstances are present." *State v. Donnay*, 600 N.W.2d 471, 473–74 (Minn. App.

8

1999) (quotation omitted), *review denied* (Minn. Nov. 17, 1999). When justifying a dispositional departure, the district court focuses on the defendant as an individual and on whether the presumptive sentence would be best for him and for society. *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983). Minnesota courts are guided by the *Trog* factors to determine if a defendant is particularly amenable to individualized treatment in a probationary setting. *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). These factors include "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of [the defendant's] friends and/or family." *Id.* However, the presence of mitigating factors "[does] not obligate the court to place [the] defendant on probation or impose a shorter term than the presumptive term." *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984).

Appellant argues that the district court did not fully consider the *Trog* factors that weighed in favor of departure and did not specifically cite to these factors or address them individually during the sentencing hearing. The district court is not required to cite to the *Trog* factors, but rather is only required to consider the circumstances for and against departure and exercise its discretion. *See State v. Pegel*, 795 N.W.2d 251, 254 (Minn. App. 2011) (stating that there is "no requirement" that the district court consider each *Trog* factor, provided that the court "deliberately considered circumstances for and against departure and exercised its discretion").

Here, the district court imposed a sentence within the presumptive range. *See* Minn. Sent. Guidelines 4.A (2014). Moreover, the district court explicitly considered that appellant had taken steps towards bettering his life and becoming more responsible.

The district court also noted that it understood that appellant wanted to enroll in Teen Challenge as it would help him achieve this goal and that appellant wanted to serve as a role model to his younger siblings. It then concluded that, considering all the mitigating factors, they still did not outweigh appellant's long history of failing probation and failing to meet his responsibilities to the district court and probation. Ultimately, appellant's arguments are unavailing because the district court, in exercising its discretion, considered the circumstances for and against departure and found that there were insufficient reasons for departure. *See State v. Mendoza*, 638 N.W.2d 480, 483 (Minn. App. 2002), *review denied* (Minn. Apr. 16, 2002). Thus, the district court did not abuse its discretion in denying appellant's downward-dispositional-departure motion.

**Affirmed**.