*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1073**

State of Minnesota,
Respondent,

vs.

William James Chestnut,
Appellant.

**Filed April 25, 2016
Affirmed
Stauber, Judge**

Ramsey County District Court
File No. 62CR143332

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**UNPUBLISHED OPINION**

**STAUBER**, Judge

On appeal from his conviction of second-degree unintentional murder, appellant argues that his 225-month sentence must be reduced because he pleaded guilty in exchange for a 144-month sentence. We affirm.

## FACTS

Appellant William Chestnut was charged with one count of second-degree intentional murder and one count of second-degree unintentional murder. Appellant subsequently pleaded guilty to second-degree unintentional murder and the second-degree intentional murder charge was dismissed. At sentencing, appellant complained that the prosecutor "switched" the plea agreement. According to appellant, the prosecutor told him that the plea agreement was for "18, do 12."[1] The district court disagreed with appellant's recollection that the agreement was for appellant to serve 12 years, and sentenced appellant to 225 months in prison. This appeal followed.

## DECISION

Plea agreements represent bargained-for understandings between the state and defendants, where each party foregoes rights and assumes risks in exchange for certainty regarding the outcome of a criminal proceeding. *State v. Meredyk*, 754 N.W.2d 596, 603 (Minn. App. 2008). Contract-law principles are relevant to the interpretation of plea

---

[1] An executed sentence, for an offense committed after August 1993, consists of two parts: a term of imprisonment that is generally equal to two-thirds of the executed sentence, and a supervised release term generally equal to one-third of the executed sentence. Minn. Stat. § 244.101, subd. 1 (2012).

agreements. *State v. Spaeth*, 552 N.W.2d 187, 194 (Minn. 1996). The determination of the terms of a plea agreement is a factual inquiry. *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn. 2004). In order to determine whether the parties have honored a plea agreement, this court first looks to what the parties "reasonably understood to be the terms of the agreement." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quotation omitted). Ambiguities in plea agreements are construed in favor of defendants. *In re Ashman*, 608 N.W.2d 853, 858 (Minn. 2000).

Appellant argues that his consistent indications "throughout the proceedings that he believed he was pleading guilty in exchange for a 12-year sentence" demonstrates, at the very least, an ambiguity in the plea agreement. Thus, appellant argues that because he "understood he was pleading guilty in exchange for a 12-year sentence," his "sentence [should] be reduced to that term."

We disagree. Throughout the course of the proceedings, appellant made only two references to a 12-year sentence, with the second reference occurring at sentencing. Appellant's only other reference to a 12-year sentence occurred at a pretrial hearing on January 15, 2015. But three days earlier, at a January 12, 2015 pretrial hearing, the prosecutor read the state's plea offer on the record:

> the offer is to plead guilty to Count II, Unintentional Second Degree Murder, to be sentenced at the middle of the box and to dismiss Count I at sentencing, which is the Intentional Second Degree Murder count. With respect to today's proceedings . . . the state has filed a notice of intent to seek an enhanced sentence in the event of a conviction based on the very serious aggravating factors that appear in this case. And I would expect at sentencing to be asking for the high end of the box and applying a multiplier at the time.

3

At the time the plea offer was read onto the record on January 12, the parties were uncertain whether appellant had four or five criminal-history points. The plea agreement was based on a criminal-history score of four, which under the sentencing guidelines carried a presumptive "middle-of-the-box" sentence of 210 months. Appellant's time served under a 210-month sentence would have been approximately 12 years. *See* Minn. Stat. § 244.101, subd. 1. Thus, appellant's claimed ambiguity was based on his misinterpretation of an accurate statement setting forth the plea offer.

Moreover, the record reflects that the plea offer was confirmed at the January 15 pretrial hearing. At that hearing, the offer was accurately clarified to be "225 months in custody" based on a "middle of the box" sentence stemming from appellant's criminal-history score. The plea offer was then further clarified at the January 20, 2015 hearing. Throughout these proceedings, appellant had ample time to discuss the offer with counsel, and the record reflects that both the district court and the prosecutor were careful not to proceed with a guilty plea until appellant had sufficient time to discuss his options with counsel.

Finally, the record reflects that at appellant's plea hearing advisory counsel stated on the record that appellant would "plead guilty to Count II and . . . be sentenced in the middle of the box." Appellant then answered "[y]es" when asked if he understood that "the only agreement we have is that you'll plead guilty to Count II, which is Unintentional Murder during the Commission of a Felony, and that you will be sentenced to the middle of the box. Do you understand what that means?" Appellant also agreed that he had "gone through the Minnesota Sentencing Guidelines Worksheet" with his

attorney, and that he understood what his presumptive sentence would be. The district court found that "the facts offered in support of your plea constitute sufficient evidence to support a jury verdict of guilty and that the plea you are making this morning is voluntary, it's knowing, it's after having a substantial opportunity to confer with" counsel. When viewed in its entirety, the record reveals no ambiguity in the plea agreement, but rather that throughout the proceedings, the state's plea agreement was for a "middle-of-the-box" guidelines sentence in exchange for appellant's plea of guilty to second-degree unintentional murder. Therefore, the record does not support appellant's claim that he is entitled to a 12-year sentence due to an ambiguity in the plea agreement.

**Affirmed.**